Motion to dismiss overruled.

---

## OVER *v.* BYRAM FOUNDRY COMPANY.

[No. 5,592.    Filed March 13, 1906.]

1. CONTRACTS. — *Sales.* — *Enforcement.* — A contract fixing the price and terms of a sale of sash weights governs the amount of recovery therefor unless there is some exception taking the case out of the general rule.    p. 455.

2. SAME.—*Manufacture of Goods.*—*Breach.*—Where plaintiff contracted to sell to defendant all the sash weights it should make during the period of such contract reserving the "right to discontinue the making" thereof any time during such period, its exercise of such right of discontinuance was not a breach of such contract.    p. 455.

3. SAME.—*Restraint of Trade.*—*Monopolies.*—*Statutes.*—A contract by which plaintiff agrees to sell all of the sash weights it should make during the "remainder of the year" to defendant, a manufacturer of sash weights, is not void as being in violation of §3312g Burns 1901, Acts 1897, p. 159, §1, providing that all contracts, by persons who "control the output of said article of merchandise," made to prevent competition "in the importation or sale of articles imported into this State," shall be void. p. 455.

4. SAME.—*Monopolies.*—*Common Law.*—*Test.*—A contract by which plaintiff agreed to sell all of the sash weights it should make during "the remainder of the year" to defendant, also a manufacturer of sash weights, is not void at the common law as monopolistic, the test being whether such contract is inimical to public interest.    p. 457.

5. SAME.—*Corporations.*—*Ultra Vires.*—*Public Duty.*—A manufacturing corporation may lawfully contract its output for a limited time to one person.    p. 458.

From Superior Court of Marion County (63,389); *Vinson Carter,* Judge.

Action by the Byram Foundry Company against Ewald Over. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Newton M. Taylor,* for appellant.

*Charles E. Averill,* for appellee.

Roby, C. J.—Action for goods sold and delivered by appellee to appellant, at his special request. A bill of particulars was filed with the complaint. Appellant answered by denial and plea of payment. Appellant filed a counterclaim in four paragraphs, all of which were founded upon an alleged breach of a written contract filed therewith. Demurrers to the counterclaim were overruled, and appellee answered in general denial, and specially in a second paragraph setting up the invalidity of the contract counted upon as being in restraint of trade. A demurrer to this paragraph of answer was overruled and a reply in denial filed. The issues were submitted to the court for trial. Finding and judgment for appellee in the sum of $168.75.

The grounds for a new trial stated in appellant's motion are that the decision is not sustained by sufficient evidence, that it is contrary to law, that the court erred in excluding evidence, in support of the complaint, as to the amount of weights made by appellee, and in admitting testimony as to the sale and delivery of weights to appellant, it appearing that such articles were sold in pursuance of the written contract between the parties. The error assigned is in the overruling of the motion for a new trial.

It was developed by interrogatories submitted to appellee, and is established by all the relevant evidence, that the goods, on account of which the appellee sues, were sold and delivered by it to the appellant under and in accordance with a written contract between them of the following tenor:

"Articles of agreement entered into at Indianapolis, Indiana, this 27th day of March, 1901, by and between the Byram Foundry Company and Ewald Over,

all of the city of Indianapolis, Indiana, witnesseth: Said Byram Foundry Company agrees to, without unnecessary delay, mail a letter or postal withdrawing the price of seventy-five cents per hundred pounds recently made on sash weights to all parties to whom said price was made. Said Byram Foundry Company hereby agrees to make round sash weights during the remainder of this year, not to exceed five hundred tons, which amount of sash weights said Ewald Over agrees to buy of them, delivered either at the depots in this city, or to Ewald Over's place of business, or to his customers in said city; sash weights to be center hung and made in a merchantable manner and full weight as near as practicable. Said Ewald Over hereby agrees to pay said Byram Foundry Company $16 per ton for said weights, monthly settlements in cash on or before the 10th of the month following invoice. Said Byram Foundry Company reserves the right to fill any and all contracts already made on their own account out of the said five hundred tons. Said Byram Foundry Company also reserves the right to sell sash weights at prices to be named by said Ewald Over at any time during the term of this agreement, the amount of money obtained in pay for them to be credited to said Ewald Over, and monthly statements of all sales to be made to said Ewald Over, giving names to whom sold, sizes of weights, number of pounds, and the amount of money received in payment. It is understood that the sash weights made under this contract shall be fairly assorted, and delivered in amounts of about fifty to sixty tons per month, and that said Ewald Over may suggest the sizes of such fair assortment. Said Byram Foundry Company also agrees not to make any double ender, round, square or flat weights during the term of this agreement. Said Byram Foundry Company reserves the right to discontinue the making of sash weights at any time during the term of this agreement.

"Witness our hands and seals this 27th day of March, 1901.

Ewald Over.
Byram Foundry Company.
H. G. Byram,
V. P. and Genl. Mgr."

This contract fixes the price and terms of sale of the articles specified, and in the absence of an exception taking the case out of the general rule it can not be ignored.

1. *Everett* v. *Stuck* (1900), 25 Ind. App. 279; *Baltimore, etc., R. Co.* v. *Ragsdale* (1896), 14 Ind. App. 406; *Louisville, etc., R. Co.* v. *Barnes* (1896), 16 Ind. App. 312.

Appellee claims that, while a written contract was made, it was not performed by either party, and that a recovery for the reasonable value of the property accepted and used by the appellant may therefore be had.

2. The appellee seems to have carried out the contract up to the date of the following letter:

"Indianapolis, U. S. A.
September 4, 1901.

Ewald Over,
    City.
Dear Sir:

Owing to the scarcity and consequent high price of scrap, there is no money in sash weights at our contract price, therefore, as we have sufficient work to run our shop without making any weights, we will be unable to make you any further shipments during the month of September, and will have to decline your order of 30th ult.

Respectfully,
Byram Foundry Company."

The right to discontinue the making of weights at any time during the term of the contract was, by the last item thereof, given to appellee. The exercise of the right thus secured did not amount to breach of contract, but was an act in pursuance thereof, leaving the settlement for goods furnished thereunder to be made as stipulated.

It is assumed that the contract is void as against public policy as in restraint of trade. Section one of the act of 1897 (Acts 1897, p. 159, §3312g Burns 1901) declares contracts between persons or corporations who control the output of any article of merchan-

3.

dise void when such contracts are made with a view to lessen free competition in the importation or in the sale of imported articles, and also declares contracts between persons or corporations who control the output of "said article of merchandise" which are designed or tend to advance, reduce or control the price or cost to the producer or to the consumer of any such product or article, to be against public policy, unlawful and void.

In order that a contract be within the purview of this act, it must be made between persons or corporations "who control the output." The first two inhibitions apply to contracts made with a view to lessen free competition in the importation of articles of merchandise and in the sale of imported articles. The contract referred to must be made within the State, but the monopoly, in the legislative mind, could not have been limited to the State, since the thing guarded against has relation wholly to goods made without the State. The last two inhibitions within which the present case falls, if it is within the statute at all, are against contracts made between persons "who control the output of said article of merchandise." The output referred to in the first instance not being restricted to goods made in the State, it is questionable if a narrower meaning should be given the term when used a second time in this section.

The legislature evidently meant to limit the sole power, or power largely in excess of that possessed by others, in dealing in some particular commodity; but, assuming that the last two inhibitions apply to persons controlling the output of articles manufactured in Indiana, there is a total lack of evidence to sustain the judgment. The article is one which may be made of the commonest iron and at any foundry. The parties referred to by the act are not those who control the output of a single factory or a single town. In these days of quick communication and rapid transportation, such a construction can not for an instant be enter-

tained. The statute was directed against monopoly. The word is defined as, "The abuse of free commerce by which one or more individuals have procured the advantage of selling alone all of a particular kind of merchandise to the detriment of the public." No two establishments can have a monopoly of the business of manufacturing sash weights, so that the first and essential element necessary to the application of the act to the contract in question is wanting. If the act were to be construed as rendering void such a contract as the one under consideration, it would be impossible for one person to purchase the most common articles of merchandise from another, since, under the simplest principles of the law of supply and demand, every purchase "tends" to advance the price of the commodity purchased. If so applied, the section would render void a contract tending to make bread cheaper or to reduce the cost to the consumer of any other necessity of life. Such a construction would invalidate the law, and ascribe an intention to the lawmaking body which it is impossible to believe existed.

Neither is the contract void at common law. By it one party agrees to make for another during "the remainder of the year," round sash weights, not to exceed five hundred tons, which amount the other party agrees to buy at a stipulated price. Each case involving the question of public policy and restraint of trade is decided upon its own facts. *Consumers Oil Co.* v. *Nunnemaker* (1895), 142 Ind. 560, 564, 51 Am. St. 193; *Oregon Steam Nav. Co.* v. *Winsor* (1873), 87 U. S. 64, 22 L. Ed. 315; *Fowle* v. *Park* (1889), 131 U. S. 88, 9 Sup. Ct. 658, 33 L. Ed. 67; *Gibbs* v. *Consolidated Gas Co.* (1889), 130 U. S. 396, 32 L. Ed. 979, 9 Sup. Ct. 553. The test is whether the contract is inimical to the public interest. *Consumers Oil Co.* v. *Nunnemaker, supra.*

The appellant agreed to buy and pay for all the weights, not exceeding five hundred tons, which the appellee might

make during the remainder of the year, appellee reserving the right to discontinue making them at any time. The strict rule applicable to contracts, by which persons or corporations holding franchises or rights of a *quasi* public nature attempt to evade the corresponding duty, is not applicable to a case involving the manufacturer of cast-iron window weights. The law does not permit any restraint whatever in the former class, but a contract binding the party manufacturing to sell exclusively to one person during a limited period is valid. *Trentman* v. *Wahrenburg* (1903), 30 Ind. App. 304; Greenhood, Public Policy, rule DLXI, illustrations; 24 Am. and Eng. Ency. Law (2d ed.), 854; *Moore & Handley Hardware Co.* v. *Towers Hardware Co.* (1886), 87 Ala. 210, 6 South. 41, 13 Am. St. 25. "Combinations between individuals or firms for the regulation of prices, and of competition in business, are not monopolies, and are not unlawful as in restraint of trade, so long as they are reasonable, and do not include all of a commodity or trade, or create such restrictions as to materially affect the freedom of commerce." *Herriman* v. *Menzies* (1896), 115 Cal. 16, 44 Pac. 660, 46 Pac. 730, 35 L. R. A. 318, 56 Am. St. 82. There is no suggestion that the price fixed was unreasonable. The rights of the parties must therefore be determined by reference to the written contract. These considerations lead to a reversal of the judgment.

Other questions discussed in the brief, in view of the conclusions reached, are not relevant.

The judgment is reversed and cause remanded, with instructions to sustain appellant's motion for a new trial and for other consistent proceedings.