## The White Company v. W. P. Farley & Company.

(Decided March 18, 1927.)

### Appeal from Mason Circuit Court.

1. Principal and Agent.—If motor truck manufacturer canceled exclusive selling agency contract at a time when agent was negotiating for sale of truck, in order to make sale to agent's prospect

and to deprive agent of commmission on his refusal to rebate a part of commission to induce the sale, such cancellation would be a fraud on agent's rights, entitling him to recover commission on the sale.

2. Principal and Agent.—Agency contract for sale of motor trucks, fixing area in which agent is to sell, and prohibiting him from selling trucks outside of such territory on penalty of cancellation of contract, and providing for an additional discount based on total cash sales during existence of contract, held an "exclusive selling agency contract," though not specifically so designated.

[Ed. Note.—For other definitions see Words and Phrases, Second Series, Exclusive Sale.]

3. Principal and Agent.—Under exclusive selling agency contract, requiring agent to make certain number of bona fide sales calls per month on prospective purchases, and to make daily report of such calls, and in another subdivision providing that, if required number of calls are not made and reports furnished as stipulated, agent waives all claims to additional bonus discount, held that failure to make required number of calls or daily reports did not authorize manufacturer to cancel contract, but merely operated to waive agent's claims to bonus discount.

4. Principal and Agent.—Evidence held not to show agent's failure to push sale of motor trucks in violation of exclusive selling agency contract so as to authorize manufacturer to cancel contract.

5. Principal and Agent.—Where exclusive selling agent of motor trucks, by advertising, employment of agents, and by his own efforts, worked up a prospective sale, whereby on its consummation he would have earned a commission, held that, even if manufacturer had a right to terminate agency under the contract, he was required to remunerate agent for his services in procuring purchaser to whom manufacturer subsequently sold truck.

6. Principal and Agent.—Measure of damages for breach of contract giving plaintiff the exclusive agency for sale of motor trucks, where manufacturer invades plaintiff's territory, and makes a sale, is the amount of commission of which plaintiff was deprived by sale made by manufacturer.

ALLAN D. COLE for appellant.

M. J. HENNESSEY for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellant is a manufacturer at Cleveland, Ohio, of auto trucks, while appellee is a business man of Maysville, Ky.

On the 1st of October, 1924, the parties entered into a contract of sales agency for the period of one year,

whereby appellee became the sales agent of appellant in a designated territory, embracing Mason county.

The contract refers to the manufacturer as "seller" and to the appellee as "purchaser," and provides that the seller shall furnish to the purchaser for sale in the designated territory certain kinds and descriptions of trucks manufactured by it at fixed prices, and provides that the purchaser shall be allowed for his compensation 20% discount from such prices. Among the trucks so enumerated in the contract was one the list price of which was $4,200.00, and appellee and his agents and employees interested the firm of Kirk & Key in the purchase of such a truck. Kirk & Key desired to get a rebate from the list price and sought to make the purchase through another firm or corporation in Maysville to that end, but appellee informed them he could not sell the truck to them in that way, but, upon being informed that it was to be a cash transaction, he informed Key, of Kirk & Key, that he would give them the customary cash discount to be later arranged. These transactions appear to have occurred throughout the late fall and winter of 1924 and 1925, and the last interview took place about the 6th of March, 1925.

A short time thereafter Key went to Cincinnati and there sought an interview with appellant's manager at that place, which office controlled the Maysville territory. After such interview the manager called up appellee at Maysville and asked him why he did not sell Kirk & Key a truck, and was informed by appellee that he thought that the matter would be closed up as soon as he could see Mr. Key. Thereupon the manager told him Key was then in his office and claimed appellee had refused to sell him a truck, but was told by appellee there was some mistake. The manager then asked him if he was willing to close the sale to Kirk & Key on an 85% basis, and appellee asked him if he meant that he should give up three-fourths of his commission, and being informed by the manager that that was what he meant, appellee declined to do so, and the manager said, "Then we will have to handle it from this end of the line," but when informed by appellee they could not do so under his contract, the manager informed him that he would cancel his contract, and that he would hear from him tomorrow. On the next day he received a letter from the manager dated March 23, 1925, wherein he advised appel-

lee it was deemed necessary to cancel the contract, but in doing so did not place the right to cancellation upon the ground referred to in the conversation referred to over the phone, but upon two other grounds as follow:

> "I have had my salesman try to impress upon you the necessity of turning in your daily report cards on prospects, but you have failed to come anywhere near keeping up your quota. This is a direct violation of your contract. It has also been brought to my attention that you are also a dealer for at least one other truck company, and this is also another violation of the contract."

Thereafter appellant sold the same truck to Kirk & Key on the 7th of May, 1925, and prior thereto had entered into a sales agency contract with Kirk & Key whereby they succeeded appellee as appellant's agent.

Proceeding upon the theory that there had been no good faith cancellation by appellant of the sales agency contract, and that the attempted cancellation had been made for the purpose of making the sale to Kirk & Key directly by appellant whereby he would be deprived of his contract commission, appellee instituted this action against appellant for his 20% commission on the sale of the $4,200.00 truck in his territory during the existence of his contract.

The answer denied many of the material allegations in the petition, and affirmatively alleged that the sale by appellant to Kirk & Key had been made after the cancellation of plaintiff's contract. The reply denied the cancellation of the contract, and alleged that, if the sale made by appellant to Kirk & Key was deferred until after such cancellation, it was done for the purpose of defrauding plaintiff of his commission under the terms of the contract. The affirmative allegations in the reply were controverted, and upon the issues so made the trial was had.

The court gave only two instructions. In the first he authorized a verdict for the plaintiff if the jury should believe that while plaintiff was the dealer-agent of defendant negotiations were pending between him as such dealer and Kirk & Key for the sale to the latter of the $4,200.00 truck, and that defendant company on refusal of plaintiff to rebate a part of his contract commission as an inducement to such sale, intervened and cancelled

its contract with plaintiff for the purpose of making such sale directly by the company to Kirk & Key, and subsequently did consummate such sale.

This instruction presented accurately the only issue of fact in the case, for if the cancellation was made for the purpose of depriving the plaintiff of his contract commission, and the sale was thereafter made by the company in the territory set apart to plaintiff, the attempted cancellation was a fraud upon his rights, and did not have the effect to deprive him of such rights, even though it was ostensibly made for other reasons.

The second instruction only told the jury if they found for the plaintiff to find $840.00, the full amount of his contract commission.

The jury found for the plaintiff the $840.00, the full 20% contract commission on the sale of the truck listed at $4,200.00, and from a judgment on that verdict the defendant has appealed.

The contract appears to have been prepared by appellant, and does not specifically provide that it is an exclusive contract. Its provisions as a whole, however, are inconsistent with any other view. It not only definitely fixes the area in which appellee is authorized to sell its trucks, but the agent is expressly required not to sell any of appellant's trucks outside of, or to be sold outside of, the designated territory, and provides that if the agent violates this provision the company may immediately cancel the contract. It requires the agent to handle no other commercial motor cars except those manufactured by appellant, and to handle no parts for White commercial motor cars except those manufactured by appellant. It further provides for the allowance to the agent of an additional discount called a bonus commission based upon the net amount paid in cash on or before the expiration of the contract, the amount of the bonus commission depending upon the total cash sales during the existence of the contract; and that additional discount is based partially

"upon the price the purchaser would have paid hereunder for all standard models of new commercial car chassis above enumerated delivered by the White Company *and used in the territory in which the purchaser (agent) hereunder sells White commercial motor cars.*"

Clearly under these provisions the contract was intended to be, and was considered by the parties, an exclusive agency during its term, and there is no contention in appellant's briefs that it was otherwise, it being virtually conceded that appellant during the life of the contract had no right to invade that territory and sell its trucks so as to deprive appellee of his contract commission.

Under the heading of "The Purchaser Agrees," in the seventh clause therein, the agent agrees to have made so many *bona fide* sales calls per month on prospective purchasers, and the territory is subdivided, requiring so many calls per month in each division of the territory; and he is required to keep a record of such calls and mail same daily to appellant at Cincinnati. But in the very next subdivision under that heading the purchaser only agrees that if an average of — calls per month is not made, and reports thereof furnished appellant as stipulated, the agent then waives all claims and rights to the so-called bonus discount above referred to, but makes no reference whatsoever to the original discount of 20%.

Obviously, therefore, the failure to make the number of calls specified upon prospective customers was not intended to be a ground authorizing a cancellation of the contract, but the sole penalty provided by the contract itself for the failure so to do by the agent was that he should waive all claims and rights to the bonus discount, and that bonus discount is not involved in this action. It will, therefore, be seen that the right asserted in the manager's letter as ground for the cancellation of the contract under its terms was that appellee had failed to return to appellant his daily report cards on prospects and had not been keeping up his quota, which did not under the terms of the contract furnish appellant grounds to rescind it, but only operated so as to waive appellee's claims to the bonus discount provided for.

The letter also recites as an additional ground for rescinding the contract that it had information that appellee was handling the trucks of another concern, and this turned out in the evidence to have been untrue.

It may be proper to say that, even if the failure to make the specified number of calls upon prospects had been made a ground of rescission, there is no evidence in the record to substantiate any such ground.

But appellant says that it had the absolute right to rescind the contract at any time without notice under the following provisions of the contract:

"In case of violation of this agreement by the purchaser, neglect or refusal to comply with any of the provisions herein contained, or if the purchaser is not pushing the sale of White commercial motor cars to its fullest extent, the seller may cancel this agreement without notice to the purchaser."

The only evidence in the record tending to show that appellee was not pushing the sale of appellant's trucks is the statement of Mr. Key that he called upon appellee on the sixth of March, 1925, and sought to make the purchase of the truck through another firm in Maysville to the end that he might get a discount or rebate in the purchase price, and was informed by appellee that he could not do that; that when he told appellee it was to be a cash transaction appellee agreed he might allow him a discount for cash, but there was no agreement as to the amount at that time, and they separated with the understanding that appellee would see him again. He then states that apppellee never did call on him or mention the matter further to him prior to his visit later in the month to Cincinnati. Appellee, however, testifies that he did, a short time thereafter, call upon Key at his office with a view to closing the matter up and found him out of his office and failed to see him. Accepting, therefore, the statements of both of these witnesses it fails to show that appellee was not pushing the sale of appellant's trucks. On the contrary, when the manager called appellee from Cincinnati the latter told him that he regarded the matter as practically closed, and that it probably would be closed in a short time, or as soon as he could see Mr. Key. Obviously this was no such dereliction upon the part of appellee as authorized the cancellation of the contract.

Even when a party to a contract exercises the right under its terms to cancel it when it has been partially performed by the other party, he is required to place the other *in statu quo;* that is, he must not cancel it so as to injuriously affect any rights that have already accrued to the other in its partial execution. Here appellee had, by advertising, by the employment or agents, and by his own efforts, worked up a prospective sale to Kirk & Key,

and had interested them in the purchase of a truck through his agency, whereby he would have upon its consummation been entitled to $840.00 in commission, and if appellant under those conditions sought to terminate the agency and had the right to do so under its contract, yet the law requires it to do justice to the opposite party, and to make him whole and remunerate him for the service he has rendered in its execution.

But we have seen appellant had no right to terminate the contract without notice for the alleged reasons assigned, and the evidence tends strongly to point to the conclusion that the grounds so to do asserted in the letter, not only did not exist under the terms of the contract itself, but were in truth a mere pretext, and the real reason was because appellee had declined to give up three-fourths of his contract commission in order to effect the sale, a thing he was not required to do under its terms.

But it is said that the measure of damages fixed by the trial court was not proper, and that appellee, having failed to consummate the sale to Kirk & Key, certainly was not entitled to full commission. The precise question was presented in the case of Sparks v. Reliable Dayton Motor Car Co., Ann. Cas. 1912C, page 1251 (Kan.), a case somewhat similar to this and involving a similar contract, and it was held that the measure of recovery was the amount the agent was deprived of when the manufacturer invaded his territory and made the sale, and in so holding quoted with approval from the California case of Schiffman v. Peerless Motor Car Co., 13 Cal. App. 600 (110 Pac. 460), wherein the court said:

> "There is nothing speculative or uncertain as to the amount of profits of which plaintiff was thus deprived, and their loss is so closely connected with the breach of the obligation by defendant that it is difficult to see any ground upon which it can be said that plaintiff's injury is too remote either in nature or origin."

Appended to the Sparks case is an instructive note on that subject. Erskine v. Chevrolet Motor Co., 32 A. L. R. 196 and note. See also Oberfelder v. J. G. Mattingly Co., 120 S. W. 352; 6 R. C. L., pp. 926, 936 and 940; 13 C. J., pp. 604, 608 and 613.

The trial was conducted in accordance with the views we have expressed, the instructions aptly submitted the issues, and the evidence fully authorized the return of the verdict.

Judgment affirmed.

Whole court (except Judge Rees) sitting.