13220

PHILADELPHIA STORAGE BATTERY CO. v. MUTUAL TIRE STORES

(159 S. E., 825)

*Mr. Hunter A. Gibbes,* for appellant,

*Messrs. F. William Cappelmann* and *C. T. Graydon,* for respondent,

August 6, 1931.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

June 1, 1929, the appellant and respondent entered into a written agreement by which respondent was constituted "Jobber" to sell the radio receivers, speakers, and tubes of appellant, who is designated "Philco" in the agreement. By its terms the agreement was to end on July 30, 1930, unless sooner terminated as by the provisions of the agreement, which were as follows: "This agreement may be terminated

at any time before the end of the term by either Philco or the Jobber upon the giving of written notice of the termination by either party to the other."

January 4, 1930, appellant mailed to respondent a letter of cancellation of the contract, without previous notice of intention to cancel. January 25, 1930, and before the receipt of the letter of cancellation, respondent had mailed to appellant a check for $1,508.96. Upon receipt of the letter of cancellation, it stopped payment of the check.

Appellant brought its action—declaring for a first cause of action on the check, for $1,508.96, and for a second cause of action on account in the sum of $4,457.96. Respondent answered, alleging that appellant had canceled the contract in pursuance of a fraudulent design of supplanting respondent, disrupting its business, and making contracts with its dealers, all in breach of the contract, and to the damage of respondent in the sum of $10,000.00 actual and $10,000.00 punitive damages. To this answer appellant demurred; on the ground that the allegations of the answer do not constitute a defense or counterclaim. Appellant by its demurrer affirms that it had done nothing that it was not authorized to do by the terms of the contract. It plants itself on the provisions of the contract; alleging that the things which it has done are nominated in the contract.

Judge Townsend, who heard the demurrer on circuit, dismissed it in the following short order: "On hearing the demurrer to the answer and counterclaim, it is ordered that same be, and is hereby overruled." The case comes to this Court on appeal from that order.

There are numerous exceptions, but in the judgment of the Court the determination of two principal questions will dispose of the appeal.

The answer alleges that the jobber's agreement, or contract, was terminated by appellants without notice to respondent. Apparently respondent holds itself aggrieved by this action. The question arises then, was ap-

pellant under any legal obligation to notify respondent of its intention to terminate the contract; or could it exercise its option to terminate it and then notify the respondent? One's first impression, when this question is presented, is that it is not lawful abruptly to terminate a contract without giving notice to the other contracting party. But upon reflection it must be conceded that persons may enter into whatever contracts they see fit, which are not illegal, immoral, or against public policy.

"A contract may provide that it shall come to an end at the option of one, or either of the parties and such a stipulation, when fairly entered into, will be enforced if not contrary to equity and good conscience.  *  *  *" 13 C. J., 606.

"It is a well-established rule of law that a contract may provide for its termination at the option of one or either of the parties, and such a stipulation, when fairly entered into, will be enforced if not contrary to equity and good conscience." *Maddox Motor Co. v. Ford Motor Co.* (Tex. Com. App.), 23 S. W. (2d), 333, 338.

The clause relating to the right of cancellation of the jobber's agreement has been hereinabove set out. It is clear cut in its terms, and is free from ambiguity. It is enforceable if it be not against equity and good conscience. It would seem to be a necessary corollary that it may not be terminated, if the manner of its termination be against equity and good conscience.

Conceding then that plaintiff had the right to terminate the jobber's agreement, does it follow that the answer should have been dismissed on demurrer? It is the settled rule of pleading in this jurisdiction that, if the pleading, assailed by demurrer, sets out any cause of action or defense, which entitles it to some sort of relief, it is not subject to be dismissed on demurrer. *Norris v. Brown*, 154 S. C., 138, 151 S. E., 274; *Wilson v. Wilson*, 158 S. C., 425, 155 S. E., 627.

The answer in this case alleges that these parties once before had a contract similar in import to this one; that upon termination by expiration of its time limit they entered into the present jobber's contract; that, relying upon its relations with plaintiff and the contract, defendant bought heavily of the wares, merchandise, and products of the plaintiff; spent considerable sums of money perfecting its organization for handling of the wares and products of plaintiff; engaged and employed a number of agents and salesmen for this business; made contracts with dealers; paid for a special sign to advertise these goods; and spent large sums in otherwise advertising the business. It is further alleged by the answer that in January, 1930, and prior to the 24th day of that month, upon which date plaintiff exercised its option to terminate the agreement, "plaintiff formulated a scheme, design and conspiracy to defraud the defendant, and fraudulently decided to change the plan of distribution and to break its contract with defendant; that the plaintiff, while defendant was operating under the jobber's agreement, and without notice to the defendant, and at the peak of the radio selling season by underhand, deceitful, fraudulent and improper methods, made an agreement with the jobber in Charlotte, North Carolina, supplanting the defendant, made separate contracts with the dealers of the defendant, and arranged to, and did undermine the organization of the defendant,—all in violation and breach of the jobber's agreement between the plaintiff and defendant, and in furtherance of the conspiracy, design and scheme of plaintiff to defraud the defendant."

If these allegations be true, and for the purpose of considering the demurrer they must be taken to be true, unquestionably they state a cause of action which would entitle defendant to some sort of relief; and thus render the answer impervious to attack by demurrer.

The answer alleges further facts indicative of the alleged fraudulent design and purpose of the plaintiff to wreck the business of defendant.

It further alleges that the plaintiff refused to take over and pay for the supplies in the hands of defendant; refused to have an accounting; refused to provide defendant with means for fulfilling the warranties given by it with the equipment it had sold of the wares of plaintiff, and with the means of providing the service which defendant is required to give to dealers and purchasers of the products of plaintiff.

Analyzed, these allegations mean to charge plaintiff with bad faith and fraudulent conduct, in that, having induced defendant by means of the jobber's agreement to buy heavily of its merchandise, for the payment of which it holds defendant, it now relieves itself of the obligation to fulfill the warranties on its goods, and the service to be furnished to the purchasers of them, by the expedient of terminating the contract.

The authorities cited, and there are others which may be cited, show that a contract such as this will be enforced if not contrary to equity and good conscience.

The defendant has, in the opinion of the Court, set forth in his answer these things which entitle him to show by the evidence, if he can do so, that it would be against equity and good conscience to permit plaintiff to exercise its option to terminate the jobber's agreement in the manner, and with the intent and purpose alleged against it in the answer. We think defendant has alleged enough in its answer to entitle it to be heard in the trial Court.

The appeal is dismissed, and the order appealed from is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): This is an appeal from an order *pro forma* of his Honor, Judge Townsend, overruling a demurrer interposed by the plaintiff to the defendant's answer and counterclaim upon the general ground.

The complaint states two causes of action: (1) Upon a check for $1,508.96, dated January 25, 1930, payable to the plaintiff upon account of goods sold and delivered, the payment of which was stopped by the defendant after its transmission; and (2) upon an account for goods sold and delivered by the plaintiff to the defendant between November 25, 1929, and January 29, 1930, amounting to $4,480.84, less a credit of $24.38 and a credit of the check embraced in the above first cause of action.

The defendant answered the complaint, admitting the allegations of the complaint and setting up a counterclaim of $10,000 actual damages and $10,000 punitive damages based upon the facts as hereinafter explained.

To this answer and counterclaim the plaintiff demurred upon the general ground. The demurrer was overruled by his Honor, Judge Townsend, in a brief formal order dated January 24, 1931, and from it the plaintiff has appealed.

It appears that on June 1, 1929, the plaintiff and the defendant entered into a written contract by which the defendant was constituted a "jobber" to sell the radio products of the plaintiff. By its terms the contract was to terminate on April 30, 1930, "unless sooner terminated as hereinafter provided," as follows: "This agreement may be terminated at any time before the end of the term by either Philco or Jobber upon the giving of written notice of the termination by either party to the other."

On January 24, 1930, the plaintiff transmitted to the defendant written notice of the termination of the contract.

The charges made by the defendant against the plaintiff, as the basis of its counterclaim, may be condensed as follows: (1) That, in anticipation of its contemplated termination of the contract, the plaintiff selected a person at Charlotte, and appointed him "jobber" in place of the defendant, his territory being the same committed to the defendant, and supplied him with the names and addresses of the dealers with whom the defendant had become as-

sociated; (2) that the plaintiff made separate contracts with the dealers with whom the defendant had become associated; (3) that the plaintiff undermined the organization of the defendant; (4) that the plaintiff, after the termination of the contract, refused to check up and take over the equipment and supplies in the hands of the defendant; (5) that the plaintiff refused to have an accounting with the defendant; (6) that the plaintiff refused to provide the defendant with the means of fulfilling the warranties which the defendant had given to purchasers of the equipment sold by it; (7) that the plaintiff had failed to provide the defendant with the means of furnishing the service which the defendant was required to give dealers and purchasers who dealt with it in the purchase of the products of the plaintiff; (8) that the plaintiff failed and refused to restore the contract of June 1, 1929.

These several grounds of complaint are alleged to have been the result of a fraudulent scheme on the part of the plaintiff to injure the defendant without the slightest amplification or specification of the basis upon which such an allegation of fraud is made.

If there is anything else in the involved and vehement clamor of the defendant, I have been unable to discover it. Not a single one of the charges is more than the natural and inevitable result of the exercise by the plaintiff of a conceded right under the contract to terminate it at will.

It is conceded in the opinion of Mr. Justice Bonham that the above-quoted provision of the contract relating to its termination is perfectly clear, unambiguous, and legal; it is difficult to apprehend how the exercise of a clear, unambiguous, and legal right can form the basis of an action for damages.

Boiled down, the defendant's position is that, upon the faith of his contract with the plaintiff, he invested money in the products of the plaintiff; expended money in advertising; erected display signs; organized a corps of dealers to whom he sold and delivered equipment; employed salesmen;

responded to warranties made in sales; established a service station for the benefit of purchasers of the products; and has lost the reasonable profits which he had the right to expect until the natural expiration of the contract; by reason whereof the plaintiff has disrupted his entire business.

Not a single item of such damage was other than he could reasonably have anticipated in the event that the plaintiff exercised the conceded right to terminate the contract, guaranteed to it under the terms of the contract signed by the defendant.

By an analysis of the several grounds of his counterclaim, it will be seen that the defendant has no ground of complaint:

1. If, as conceded, the plaintiff had the legal right to terminate the contract, and determined to do so on January 24, 1930, he certainly had the right in anticipation to engage another to take the place of the defendant at the termination of the contract, and to furnish him with the names and addresses of the dealers who had been acting as such with the defendant.

2. It surely was no breach of its engagements with the defendant for the plaintiff to make new contracts with the dealers, familiar with the products, who had been selected by the defendant. If they had not desired to serve under the new jobber, there was nothing to compel such service, a purely voluntary service on their part.

3. The charge that the plaintiff had undermined the organization of the defendant was to some extent the natural and inevitable result of the legal termination of the contract. Those who had been dealers under the defendant could as easily, if they so desired, have continued as such with the defendant handling the products of other establishments.

4. It is inconceivable how the defendant could have been damaged by the failure and refusal of the plaintiff, after the termination of the contract, to check up and take over the equipment and supplies on hand. The defendant has shed no light upon this question. I find nothing in the contract

which requires the plaintiff to take back anything that had been sold outright to the defendant.

5. There is little difference between "checking up" and "having an accounting." There is nothing in the contract which requires an accounting; the relation between the parties was seller and buyer, not principal and agent.

6. I find nothing in the contract which required the plaintiff to provide the defendant with the means of fulfilling warranties; nor anything which indicates a loss to the defendant by a breach of such duty if it existed.

7. The same may be said of the breach of an alleged duty to provide the means of establishing a service station.

8. The plaintiff exercised its right to terminate the contract. I find nothing in it which requires a restoration of what had been legally terminated.

It is worthy of note that the contract authorized the defendant as "jobber" to designate dealers with the approval of the plaintiff; that is evidently how the plaintiff was in possession of their names and addresses; certainly the legal right to terminate the contract carried with it the right to subsitute another for the defendant as jobber and to supply him with the names and addresses of the approved dealers.

It is clear that the defendant has not complied with the law of pleading fraud.

In *Donaldson v. Temple,* 96 S. C., 240, 80 S. E., 437, the Court said: "Punitive damages cannot be recovered for breach of contract, except where the breach is accompanied by a fraudulent act resulting in damages to the other party to the contract. Where fraudulent breach is alleged, all the facts relied on to constitute fraud must be set out."

The counterclaim is based upon an alleged tort; it appears elementary that one doing an act which he is legally authorized and entitled to do cannot be said to have committed a tort, the antipodes of the legal right. *Stock v. Boston,* 149 Mass., 410, 21 N. E., 871, 14 Am. St. Rep., 430.

In 26 R. C. L., 757, it is said: "It has been said that at common law there was a cause of action whenever one per-

son did damage to another, wilfully and intentionally, without just cause or excuse, and the general statement is familiar that wherever there is a wrong there is a remedy. This rule contemplates, however, that a wrong is suffered by the unlawful act of another, and if there was no legal wrong, though damage resulted, there is no right of action; it being *damnum absque injuria*. In other words, 'injury,' in its legal sense, means damage resulting from an unlawful act. The fact that a case is novel does not operate to defeat a recovery, if it can be brought within the general rules of law applicable to torts. The general test to determine whether there is a liability in an action of tort is the question whether the defendant has by act or omission disregarded his duty. Accordingly the proper exercise of a legal right cannot constitute a legal wrong for which an action will lie."

In the case of *Chicago, R. I. & P. Ry. v. Dowell*, 229 U. S., 102, 33 S. Ct., 684, 57 L. Ed., 1090, and in the many cases cited, involving the question of removal, it is held that the motive of a party, in doing a legally authorized act is of no importance and cannot be inquired into.

I may add that the conclusion of his Honor, Justice Bonham, that there is nothing illegal or ambiguous in the clause permitting a termination of the contract is supported also by the following authorities: *Over v. Byram*, 37 Ind. App., 452, 77 N. E., 302, 117 Am. St. Rep., 327; *Harlow v. Oregonian*, 45 Or., 520, 78 P., 737; *Ford v. Dyer*, 148 Mo., 528, 49 S. W., 1091; *Schwab v. Baremore*, 95 Minn., 295, 104 N. W., 10; *Morrissey v. Broomal*, 37 Neb., 766, 56 N. W., 383; *Pierce v. Signor*, 131 Wis., 621, 111 N. W., 699; *Ford Motor Co. v. Alexander*, 223 Ky., 16, 2 S. W. (2d), 1031; *Maddox Motor Co. v. Ford Motor Co.* (Tex. Com. App.), 23 S. W. (2d), 333.

For these reasons I think that the demurrer of the plaintiff to the counterclaim of the defendant should have been sustained.