**AUDI VISION INC., et al. v. RCA MFG. CO., Inc.**

**No. 278.**

Circuit Court of Appeals, Second Circuit.

June 10, 1943.

Harry A. Gordon, of New York City (Harry A. & Eric C. Gordon and Abraham Lillienthal, all of New York City, on the brief), for plaintiffs-appellants.

Fred J. Knauer, of New York City (Wright, Gordon, Zachry, Parlin & Cahill and Lawrence J. McKay, all of New York City, on the brief), for defendant-appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff Audi Vision Incorporated and defendant entered into a written contract on November 19, 1941, whereby plaintiff agreed to produce certain slide films, recordings, and supplementary material—all constituting a proposed educational program for defendant's distributors and dealers in promoting the sale of defendant's phonograph records—for which defendant agreed to pay $16,200 in three installments. The first installment of $3,240 was paid upon the making of the contract. A clause of the contract entitled "Cancellations," in addition to a provision for cancellation by Audi Vision, not here material, stipulated as follows as to defendant, called "the Sponsor": "Orders for productions may be cancelled by the Sponsor on written notice at any time prior to approval of the frame-by-frame script but not thereafter; provided, however, that the Sponsor in such event shall pay at fair and customary rates for time and expense already devoted to the production, not to exceed 25% of the minimum price." In this action for breach of the contract it is alleged that defendant on or about February 2, 1942, notified plaintiff Audi Vision that it would not perform the contract, and then, to meet the expected defense of cancellation, it is set forth that until February 1, 1942, plaintiff Audi Vision had in its employ one Singer as its general manager, who had worked out the preparation of plans for the agreed educational program, and who was familiar with all details and its expected manner of completion; that defendant and Singer entered into an agreement to deprive Audi Vision of the benefits of this contract pursuant to which Singer resigned from plaintiff's employ and entered that of defendant in order to make use of all the plans and benefits of the contract; and that in consequence defendant had received all the benefits of the contract, notwithstanding its claimed cancellation. The plaintiffs other than Audi Vision were a copartnership to whom the second installment, payable January 2, 1942, had been assigned. Plaintiffs asked judgment for the contract price remaining unpaid, less the reasonable cost and value of completion of the work, estimated to be about $4,700.

In its answer defendant stressed its reliance upon its cancellation of the contract, under the clause quoted above, of which it claims first to have given Audi Vision notice on or about December 23, 1941, with final written notice on February 2, 1942, both before preparation or presentation of a frame-by-frame script. It also pleaded a first counterclaim, in which it relied on this same clause to say that the expenses incurred by Audi Vision before cancellation did not exceed $1,500 and that, therefore, it was entitled to a refund out of the sum initially paid by it of $1,740 with interest; and for a second counterclaim it set up an account of goods and merchandise delivered, showing $1,454.61 still due. Plaintiffs' reply, in addition to reiterating their claims upon the contract, challenged only the first counterclaim. Depositions were taken by both sides, and thereafter defendant moved for summary judgment dismissing the complaint and for judgment on the pleadings as to the second counterclaim. The court granted the motion and this appeal followed.

On this appeal plaintiffs do not attack the judgment given defendant on the second counterclaim, but do contest the district court's conclusions that defendant's privilege of cancellation was unrestricted and that their allegations of defendant's taking Audi Vision's general manager into its employ, in order to get the benefits of the contract notwithstanding the cancellation, did not present any issue of fact. They also object to the failure to allow

judgment at least for the second, or assigned, installment due January 2, 1942, or, in the alternative, for a balance of $810 due for time and expense already devoted to the production.

At the outset we are presented with the question of the finality of the judgment entered below. Since the judgment appearing of record does not mention the first counterclaim, that portion of the action remains standing. This is made quite clear by the statement in the court's opinion that defendant's liability to pay for time and expense incurred before cancellation "is put at issue by the first counterclaim and the reply and will be determined by a trial of that issue." Indeed, the original motion papers stated that the action was on the jury calendar for immediate trial, and that the issues would be much simplified if restricted only to the claim involved in defendant's first counterclaim. And defendant's brief here shows that it never sought summary disposition of that counterclaim. The question, therefore, arises whether the judgment, which leaves this issue undetermined, is final as to the matters it purports to adjudicate. Our only concern, of course, is as to the dismissal of the original claim on the contract; the judgment on the uncontested second counterclaim is final under the principles hereafter discussed, although the district court may still wish to stay execution upon it, pending disposition of the other matters, as provided in the last sentence of Rule 54(b), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c.

■ Even when the parties have not raised the issue, it is the duty of the court to determine whether a "decision" is "final" under Judicial Code, § 128, 28 U. S.C.A. § 225. Collins v. Miller, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616; Cory Bros. & Co. v. United States, 2 Cir., 47 F.2d 607; National Nut Co. of California v. Kelling Nut Co., 7 Cir., 134 F.2d 532. This is a matter for the appellate court to decide, whatever may have been the view of the trial court. Potter v. Beal, 1 Cir., 50 F. 860; The Attualita, 4 Cir., 238 F. 909. In the present case, however, it is interesting to note that, while plaintiffs did not make a formal motion to dismiss the appeal and contested most strenuously the district court's view that the facts they alleged did not nullify the effect of the written cancellation, nevertheless they do attack the piecemeal determination of the case by the court. Notably in their third point, dealing with the counterclaim, they argue that determination is not possible in this way, stressing that they are entitled under their allegations of performance, even if the attempted cancellation is valid, to a refund up to 25 per cent of the total purchase price or $810 more than they have been paid, for the value of Audi Vision's time and expenses.

■ Plaintiffs seem, therefore, to be on unassailable ground that on the trial yet to be had herein they are entitled to show in any event a basis of recovery for at least $810. That they had originally claimed a substantially greater amount has no bearing on the actual recovery to be had after answer filed and at trial. See Rule 54(c). Defendant essentially concedes the justice of this contention by saying in its brief that defendant's first counterclaim is now on the trial calendar awaiting trial, and that "defendant is perfectly willing to stipulate that plaintiff's claim to the $810 shall be tried together with the counterclaim, so the jury can decide whether defendant has overpaid or underpaid." That is a concession most significant in the light of the governing principle, set forth in Rule 54(b), that for a separate final judgment there must be "a determination of the issues material to a particular claim and all counterclaims arising out of the transaction or occurrence which is the subject matter of the claim."

■ Before the adoption of the federal rules it was clear that the dismissal of a counterclaim where the action was left pending would not be a final judgment. General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 432, 53 S.Ct. 202, 77 L. Ed. 408; Radio Corporation of America v. J. H. Bunnell & Co., 2 Cir., 298 F. 62. In Jefferson Electric Co. v. Sola Electric Co., 7 Cir., 122 F.2d 124, 126 (in which the final judgment in 125 F.2d 322, resting on a different ground, was reversed by the Supreme Court in 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. ——), it was held that this rule had been changed by Rule 41(b) and (c), 28 U.S.C.A. following section 723c, allowing dismissal of a counterclaim, though "we think this is an unfortunate result of the rule for the reason that it requires separate appeals from very closely related cases which would much better be combined for hearing on one appeal." But the decision fails to note that this rule dealt with the district court's control over

the dismissal of actions, not with the time of entry of final judgment, which is governed by Rule 54(b) quoted above; and hence it did not consider the background of this latter rule. See 3 Moore's Federal Practice, Cum.Supp.1942, 48, 122. Rule 54 (b) purports only to modify the previously existing law that a final judgment must finally dispose of all matters at issue in the case, see Collins v. Miller, supra, to one requiring complete disposition of a single transaction and all matters connected with it; in other respects it leaves the former law untouched. Unless, therefore, the circumstances stated in the rule exist, the judgment is not final.

■■ The reason for the modification made by Rule 54(b), as Professor Moore well states, 3 Federal Practice 3155-3158, is, of course, one naturally following from the wide extent of joinder of actions, parties, and counterclaims permitted under the new procedure. Since widely separated transactions may be joined together, even though the court has discretion to sever them or to try them separately, it would be highly undesirable to prevent finality as to such separate matters. In fact, Rule 54(b) is essentially nothing more than the pre-existing rule in equity providing for split judgments in extended cases (see Advisory Committee's Notes to Rule 54(b)), and it merely enforces what had previously been termed an "exception" for matters "distinct from the general subject of the litigation." United States v. River Rouge Improvement Co., 269 U.S. 411, 414, 46 S. Ct. 144, 145, 70 L.Ed. 339; Collins v. Miller, supra, 252 U.S. at page 371, 40 S.Ct. 347, 64 L.Ed. 616. This must necessarily be so, because the rules do not affect jurisdiction or deal with the powers of appellate courts. Rules 1, 82; Moore, op. cit. supra.

■ Rule 54(b) has recently been authoritatively interpreted in Reeves v. Beardall, 316 U.S. 283, 285, 62 S.Ct. 1085, 1087, 86 L.Ed. 1478, where the Court has adopted and enforced the test that it is "differing occurrences or transactions, which form the basis of separate units of judicial action." In that case different claims of a plaintiff based on differing facts were held to permit of final judgment, and that has been the basis of similar opinions in this court, of which Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, is perhaps the most conspicuous example. Whatever differences may have arisen in this court in some of these cases have concerned only the application of the rule to different fact situations upon which a plaintiff has based his claim, and not the rule itself or its application to the present situation. We think it is clear, therefore, that, as so aptly put by Mr. Justice Van Devanter in Rexford v. Brunswick-Balke-Collender Co., 228 U. S. 339, 346, 33 S.Ct. 515, 518, 57 L.Ed. 864, the taking of a case to the appellate court "in fragments by successive appeals" is a result which the law still "wisely prevents by postponing the right of appeal until there is a final decree disposing of the whole case." United States v. 243.22 Acres of Land, 2 Cir., 129 F.2d 678, 680, certiorari denied Lambert v. United States, 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. ——; Leonard v. Socony-Vacuum Oil Co., 7 Cir., 130 F.2d 535.

■ In the present case it can hardly be questioned that the tests of finality have not been met. In fact the claims are so connected that they turn upon the proper meaning and application of a single sentence in a lengthy written contract—the cancellation clause quoted above. Clearly the counterclaim here involved was a compulsory one within the meaning of Rule 13(a), which had to be pleaded in this action if it was to be pressed at all. Having been pleaded, it takes its force entirely from this provision of the contract, which is a vital element of plaintiffs' case, first as a possible bar to recovery of the contract price, and second as a basis for the claim of an additional allowance for expenses. Complete adjudication of either claim or counterclaim, therefore, cannot be had without continued resort to this sentence. In fact in the light of our necessary conclusion that the ruling heretofore made has been provisional only, the district court may well conclude hereafter upon further reflection that compliance with the cancellation provision may depend in part upon matters of fact as asserted by the parties, rather than exclusively upon the conclusion of law which it has heretofore made. Cf. 4 Williston on Contracts, Rev.Ed., § 1027A; Restatement, Agency, § 454; White Co. v. W. P. Farley & Co., 219 Ky. 66, 292 S.W. 472, 52 A.L.R. 541; Philadelphia Storage Battery Co. v. Mutual Tire Stores, 161 S.C. 487, 159 S.E. 825; 17 Corn.L.Q. 479; 45 Harv.L.Rev. 378.

■ Interlocutory appeals in cases other than those provided by statute at times

seem appealing as affording opportunity for the quick correction of errors which may have occurred in the course of the proceedings below. And since any general rule is always subject to exceptions, undoubtedly there will be times when in the actual posture of a case a short-cut ruling may be helpful. But there seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue. Moreover, as experience under certain practices permitting such appeals shows, there is an unfortunate tendency under such a system to stress decisions on pure points of procedure in the hope that these may shorten or evade a trial, but with the unfortunate consequence of shifting emphasis from merits to form. In fact, the inducement to interlocutory appeals often appears to come from an attempt of a trial court to press the abbreviation of a lawsuit beyond what is really feasible. If such abbreviation is denied, it seems clear that appeal does not lie, In re Finkelstein, 2 Cir., 102 F.2d 688; Jones v. St. Paul Fire & Marine Ins. Co., 5 Cir., 108 F.2d 123; Florian v. United States, 7 Cir., 114 F.2d 990;[1] 3 Moore, op. cit. supra at page 3192; and the same result must follow its grant where this does not settle all matters aris-

ing out of a single transaction or occurrence. Leonard v. Socony-Vacuum Oil Co., supra.

█ It should be clearly recognized that orders of the district court of the type entered in this action below are in essence only pre-trial orders, as explicitly provided for in Rule 16 and again in the summary judgment rule, Rule 56(d), when a complete summary judgment is not granted. But such an order is expressly subject to modification "at the trial to prevent manifest injustice." If the district court will take care in cases such as this to make it clear that its order is of the pre-trial type as authorized under these rules, the parties will then more fully recognize their rights and the court will have retained full power, as it should, to make one complete adjudication on all aspects of the case when the proper time arrives.[2]

Appeal dismissed.

FRANK, Circuit Judge (concurring).

I concur in the decision. But I think it desirable to add that the foregoing opinion neatly illustrates the desirability of our recommending changes in the statutes so as to confer on the courts of appeal discretion to allow interlocutory appeals where necessary to prevent substantial injustice. The making of recommendations in judicial opinions for statutory changes has distinguished precedent.[1]

---

[1] While the court changed its decision on rehearing, its original view is restored by the decision of the Supreme Court reversing for want of jurisdiction because of no final judgment below, 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105. Cf. Farley v. Abbetmeier, 72 App.D.C. 260, 114 F.2d 569, under special statutory procedure; 3 Moore, op. cit. supra, Cum.Supp.1942, 164, 165.

[2] Discussion of legislative reform to authorize interlocutory appeals by permission should perhaps be beyond the scope of this opinion; the writer would like to suggest, however, his doubt of the desirability of such a step. If, as he believes—and with this case as an example in point—that attempts at piecemeal adjudication usually turn out to be unsuccessful and undesirable, he cannot but think that so direct an invitation to litigants to bring up their cases before complete adjudication is unfortunate. Appellate courts will need to be hardy, indeed, to resist lending an ear to litigants who have gone to all the time and expense of bringing such

issues before them. Moreover, a hearing to decide upon hearing an appeal is almost as burdensome as hearing the appeal itself. Even a restricted privilege of interlocutory appeals, hedged about with proper limitations, such as a first request to the lower court, appears to be quite other than a real labor-saving device, to judge by the quite extensive annotations to N.Y. Civil Practice Act, §§ 588, 589.

[1] See L. Hand, J., in Parke-Davis & Co. v. H. K. Mulford Co., C.C., 189 F. 95, 116, recommending amendment of the patent law. Judge Hough's opinion in United States Asphalt Refining Co. v. Trinidad Petroleum Co., D.C., 222 F. 1006, sharply criticizing the decisions as to arbitration, aided in procuring the enactment of the Arbitration Act, 9 U.S. C.A. § 1 et seq. as shown by the legislative history of that Act. Cf. Cardozo, A Ministry of Justice, 35 Harv.L. Rev. 113 (1921). And see the recommendation to Congress recently made by this court in United States v. Mook, 2 Cir., 125 F.2d 706.

As stated in the foregoing opinion, we have no jurisdiction to consider the merits of the appeal. Yet the opinion, although obliquely, in part suggests our views on the merits, for it broadly hints that the trial court should modify at least some of the rulings from which plaintiff sought to appeal. I may say that I, too, itch to discuss the merits and, if it were proper, would do so even more in detail. But a statute which requires us to deny jurisdiction does not authorize us to intimate what we would decide if we could retain jurisdiction; when we do so intimate, we are circumventing the statute. The fact, however, that we are tempted to do so serves to show that there are cases—and this may well be one—in which our obligation to dismiss an interlocutory appeal, for want of jurisdiction, works hardship, unnecessary delay and consequently injustice.

It is, of course, true that it would be unwise to require that appeals from all intermediate rulings be granted. But there is a middle road, as shown in the statutes authorizing interlocutory appeals in connection with injunctions and in admiralty and patent cases. Those statutory provisions were the fruit of the recognition of the unwisdom of never allowing "fragmentary" appeals in any cases. Those now opposed to extending the scope of interlocutory appeals (on the ground that attempts at "piecemeal adjudication" usually turn out to be unsuccessful and undesirable) would, if they were consistent, urge the repeal of those statutory provisions. For my part, the "piecemeal" appeals authorized by those provisions have turned out, on the whole, to be successful and desirable.

The hostility to further enlargement of the scope of interlocutory appeals is said to be based on the fact that they cause a waste of time and expense to the parties and the courts. Experience indicates that there is probably more waste of time for the courts and expense for the parties involved in cases, of which the books are full, in which the courts must determine whether an appeal is or is not interlocutory. We thus have "the spectacle of a labor-saving device which causes more labor than it saves." [2]

Aside from that, and far more important, is the fact that there are undeniably cases in which anyone can see that postponement of an appellate decision until all proceedings in the court below have terminated will, because of erroneous interlocutory rulings by the trial judge, require long and needless trials which could be avoided by permitting discretionary intermediate appeals. When I was at the Bar, I frequently encountered such unfortunate cases;[3] their unfairness is perhaps less apparent to us when we are translated to the bench.

The refusal of an interlocutory appeal may, in actual result, deprive a party of

---

[2] Crick, *The Final Judgment as a Basis for Appeal*, 41 Yale L.J. (1932) 539, 557-558. Crick's statement more in full reads as follows: "These considerations, then, should prepare us for the large volume of litigation over the question of what constitutes a final judgment, and we should not be surprised at *the spectacle of a labor saving device which causes more labor than it saves.* We are really seeking to determine whether this is the sort of decision which the appellate court wishes to hear, but we spend our time arguing the question of whether the decision is a final judgment. As the number of cases increase, generalizations which were used in past times must be reformulated, or cast aside for new ones which are yet more vague or which contain words capable of more than one meaning. *Thus we create machines within machines in order to exclude or include given sets of cases as the situation may require.* And as since so many different kinds of cases are included in these general-izations, learned counsel are able to parade a vast army of decisions for the edification of the court, although that subject matter involved in them is entirely different from the case which is being argued." (Emphasis added.)

[3] In Thompson v. Murphy, 8 Cir., 93 F.2d 38, suit was begun quasi in rem on substituted service as to defendants who were non-residents of the district and in personam as to resident defendants. The resident defendants entered their appearance. But, on motion of the non-residents, the trial court entered an order dismissing the suit as to them. The non-residents moved to dismiss the appeal on the ground that the order appealed from was not final, citing Collins v. Miller, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616, and similar cases. The motion was denied because the pleadings showed that there was no joint liability between the resident and the non-resident defendants. If there had been such joint liability, the Court of Appeals would have been obliged to dis-

any review at all where "an appeal from the final decree is likely to be worthless so far as the money already paid out is concerned."[4] Judge Hosmer, in Magill v. Lyman, 6 Conn. 59, 67 (objecting to the denial of an appeal in that case because there was no final order) remarked: "Besides, if the error is reviewed, after the determination of the action at law, how inequitable and ruinous the delay! Years may elapse before this event takes place, and in the meantime the action may run the whole round of litigation until it is exhausted to the dregs, and the party is deprived of property in this unnecessary conflict much beyond the whole value of the matter in question." The prospective cost of wastefully prolonged litigation, thus caused, often induces acceptance of an unfair settlement by a party who cannot afford the financial outlays needed to continue with the trial. As the Supreme Court has said (per Chief Justice Taft): "One of the causes for complaint of the general administration of justice is the expense it entails upon the litigants * * *." Los Angeles Brush Corp. v. James, 272 U.S. 701, 707, 47 S.Ct. 286, 289, 71 L.Ed. 481. The Bills of Rights in the Constitutions of many States provide, in varying forms, that "every person ought to obtain justice freely and without being obliged to purchase it," an obviously basic principle of any decent legal system in a democracy. The needlessly excessive cost of litigation violates that principle, since, for many citizens, it puts a prohibitive price on justice. A right lost for such want of ability to buy it is no right at all.[5]

The problem is that of preventing undesirable interlocutory appeals on the one hand and of allowing desirable interlocutory appeals on the other. This problem can be solved by amending the statutes in the manner above suggested. Such amendments might well also provide that failure to seek any interlocutory appeal should not prevent a later appeal from a subsequent final order.[6]

It is suggested that a hearing by an appellate court to decide whether, in its discretion, in order to prevent injustice, it should entertain an interlocutory appeal would be almost as burdensome as the hearing of the appeal itself on the merits, and that for that reason it would be unwise to authorize such discretionary interlocutory appeals. But the burden under the existing statutes is substantially as great. For we are constantly having to decide whether an order is interlocutory and not appealable or whether it is final and appealable; since there is little finality to what is "finality,"[7] and it still remains much of a mystery, decisions on such questions are often by no means easy; the very case at bar goes to show that, in determining that a case is not appealable because there was no final order, we are frequently obliged to consider the merits; and this is so even when we refrain from discussing them in our opinion. The burden would be little heavier if we had the power to grant appeals in our discretion in order to avoid injustice. Moreover, if justice requires that we should be given such discretion, we should be glad to take on the additional labors, if any; should they prove to be too great, doubtless Congress would provide for the appointment of additional judges.

---

miss the appeal. I was one of the counsel in this case and know that, had there been such joint liability and had there therefore been a dismissal of the appeal, the consequence would have been an expensive trial (with the residents as the sole parties defendant) lasting for several months, followed by an appeal in which the court of appeals would have reversed, because of the earlier dismissal as to the non-residents. Thompson v. Murphy, supra; Thompson v. Terminal Shares, Inc., 8 Cir., 89 F.2d 652; certiorari denied Guaranty Trust Co. of New York v. Thompson, 302 U.S. 735, 736, 58 S.Ct. 121, 82 L.Ed. 568. The result of this postponed reversal would have been another expensive trial, lasting for several months, with both the residents and the non-residents as parties. It was only the lucky accident that there was no joint liability between the resident and non-resident defendants that prevented such an unfortunate waste of time and money.

[4] Crick, loc.cit., 562.

[5] The postponement of an appeal from an erroneous interlocutory order often imposes needless expense on the party in whose favor that order was made.

[6] Cf. Finality of Judgment in Appeals From Federal District Courts, 49 Yale L.J. (1940) 1476, 1482-1483; Moore, 3 Federal Practice, 1942 Supplement, 131, note 34; Crick, loc.cit., 562.

[7] United States v. 243.22 Acres of Land, 2 Cir., 129 F.2d 678, 680.

It is also suggested that, were we given such discretion, we would need to be hardy to resist lending an ear to litigants who have gone to the time and expense of bringing such applications before us. However, the Supreme Court, which has equivalent discretionary power with respect to the granting of writs of certiorari, seems capable often of refusing to lend an ear to litigants in a similar position; and we, too, who now have discretion in the matter of granting bail, setting aside defaults and allowing appeals in forma pauperis, are not too easily swayed by the efforts of the applicants.

Although the Act, 28 U.S.C.A. §§ 723b, 723c, which authorizes the Rules of Civil Procedure apparently precludes the making of rules which affect appellate jurisdiction,[8] yet I think that the Committee now engaged in preparing proposed revisions of the Rules should carefully consider the problem above discussed and recommend suitable statutory changes. For procedure should be "the 'handmaid rather than the mistress' of justice." [9] Rule 1 states, in effect, that the purpose of the Rules is "to secure the just, speedy, and inexpensive determination of every action." The statutes relating to appealability often frustrate that laudable purpose.

---

[8] 3 Moore, Federal Practice, 3155.

[9] Clark, Code Pleading (1928) 28.