## SCHENSTROM v. CONTINENTAL MACHINES, Inc.

### Civ. No. 1404.

United States District Court
D. Minnesota, Third Division.
July 28, 1949.

Wilfrid Rumble and William Mitchell, (of Doherty, Rumble, Butler & Mitchell) St. Paul, Minn., for plaintiff.

Clarence O. Holten and James S. Eriksson, Minneapolis, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff brings this action to recover damages for breach of contract. Defendant pleads cancellation and counterclaims for alleged secret profits retained by plaintiff.

Plaintiff, a graduate engineer and a fluent speaker of several languages, among them Spanish, persuaded L. A. Wilkie, defendant's chairman, to appoint Schenstrom defendant's representative to sell its products in Mexico for a period of six months. Defendant, a Minnesota corporation with its principal place of business in Minneapolis and factories in Savage, Minnesota, and Des Plaines, Illinois, is controlled by Wilkie and members of his family, who are its directors and stockholders. The DoAll Company is a partnership also controlled by the Wilkie family, with offices in Minneapolis and Des Plaines, and used by defendant in its export trade.

Plaintiff's appointment was obviously for the purpose of trying him out as to ability, integrity and business acumen during said period. From time to time there was correspondence between plaintiff and various officers of defendant having to do with the establishment of a sales policy for defendant in connection with the sale of defendant's products in Mexico. The letters in evidence make clear that plaintiff did not want to be limited too much in the matter of sale prices. During June, 1944, communications by letter between plaintiff and defendant were to a considerable extent directed at the relationship existing between Schenstrom and SKF, a well-known sales organization, particularly with reference to the methods and practices of the Schenstrom-SKF combination in the matter of sale prices. Illustrative of this is plaintiff's letter to L. A. Wilkie, dated June 2, 1944, advising that SKF was associated with him and it wanted to buy defendant's machines and resell on 60-day credit terms, "ultimate resale price being decided by them." On June 14, 1944, Wilkie acknowledged the foregoing suggestion and wrote to plaintiff, saying: "Your letter of the second explaining the program of the sales acceptances from the SKF organization is very interesting. We hope your plan will create a big volume of business. We will be glad to extend 60-day credit terms *on the machines they purchase for resale.*" (Italics supplied.) The credit terms were later changed by defendant to 30 days. The arrangement between Schenstrom and SKF was made in June, 1944, and is described in his testimony as follows: "I had an arrangement with SKF whereby they cooperated with me in the marketing of the DoAll products. They were going to lend their sales engineer's efforts to the sale of these products. They gave me office space. They financed the machines. They sold supplies over the counter. They made out my bills for supplies. They did certain parts of my bookkeeping and cooperated with me in a general way to help me make these sales."

By letter dated June 19, 1944, defendant's export manager, manifestly concerned over Schenstrom's apparent departure from defendant's uniform practice of one price to all wherever its products were sold, emphasized its "insistence that SKF quote our established list price only."

In August, 1944, as the six-month period was ending, plaintiff visited defendant's plants at Des Plaines, Illinois, and Savage, Minnesota, and its offices in Minneapolis and Des Plaines. A conference between defendant's executives and plaintiff followed at Des Plaines on or about August 25, 1944.

From the foregoing, it should be noted that prior to the conference in Des Plaines, defendant had knowledge of the Schenstrom-SKF combine. Defendant knew, of course, that it was selling its products to SKF f. o. b. factory, and that SKF was selling the same products in Mexico on a delivered basis in pesos, or, as described in the record of this case, at "7 pesos to the dollar" on the Minneapolis list price. With all this in mind, Wilkie called defendant's lawyer in and directed him to draft the contract here in question. Plaintiff left for the East on August 26th, before the contract was ready for execution. He testified that prior to boarding the train at Chicago he telephoned Wilkie at Des Plaines and said, "Remember our understanding about prices", and that Wilkie replied, "All right, don't charge too much." That plaintiff then went to Washington, D. C. to facilitate the granting of export licenses. Following this he left for New York, where he received the contract in duplicate as executed by defendant. He signed both, retaining one and returning the other. The contract, as pertinent to this proceeding, is set forth in the margin.[1]

[1] "Contract
between
DoAll International Company, A Division Of Continental Machines, Inc. of Minneapolis, Minn., U. S. A.
and
Wm. Schenstrom
Mexico City
Mexico.

"Memorandum of Agreement made this first day of September, 1944 by and between DoAll International Company, a Division of Continental Machines, Inc., hereafter referred to as the 'Company', and Wm. Schenstrom of Mexico City, Mexico, hereafter referred to as the 'Representative.'

"Witnesseth:—

"In consideration of the mutual advantages which the parties hereto believe will accrue from this Contract, and in consideration of the covenants and agreements herein contained, the Company and the Representative do hereby covenant and agree as follows:

"I. Appointment:

"Subject to the conditions hereinafter set forth The Company hereby appoints the Representative as its exclusive, authorized agent for the products and territory hereinafter stipulated, and the Representative hereby accepts said appointment.

"II. Products:

"The products of The Company and the applications thereof which are covered by this contract are as follows:

DoAll Sawing and Filing Machines
DoAll Zephyr
DoAll Band Filer
DoAll Saw Blades
DoAll File Bands
DoAll Abrasive Bands
DoAll Surface Grinders
DoAll Selectron and Chuck
DoAll Coolant
DoAll Dust Collector
DoAll Gage Blocks
DoAll Gage Instruments
Speedmasters
DoAll Saw-Eez
DoAll #120 and #240 Cutting Oil
DoAll #470 Soluble Oil
DoAll Grinding Wheels

"It is recognized that from time to time new uses or applications may be found. The Representative shall have the privilege of applying to The Company for the right to sell the appropriate product or equipment which right The Company will ordinarily give unless other arrangements or contracts previously made prevent.

"III. Territory:

"The territory included in this contract comprises all of the republic of Mexico.

"IV. Discounts or Commissions:

"Subject to the conditions hereinafter set forth, the Representative shall receive a discount or be paid a commission as follows:
DoAll Sawing and Filing Machines ......................... 20%

DoAll Zephyr ...................... 20%
DoAll Band Filer ................ 20%
DoAll Saw Blades ............... 40% and 5%
DoAll File Bands ................. 20%
DoAll Abrasive Bands .......... 10%
DoAll Surface Grinders ......... 15%
DoAll Selectron and Chuck...... 15%
DoAll Coolant .................... 15%
DoAll Dust Collector ............ 15%
DoAll Gage Blocks ............... 15%
DoAll Gage Instruments ......... 15%
Speedmaster ...................... 25%
DoAll Saw-Eez .................... 50%
DoAll #120 and #240 Cutting Oil 30%
DoAll #470 Soluble Oil ......... 30%
DoAll Grinding Wheels .......... 60%

"V. Payment of Commissions:

"Commissions earned by the Representative shall be paid to him upon payment of the product by the customer. All orders shall be taken in the name of the Company, and all orders are to be taken subject to acceptance by The Company.

"On products sold to the Representative, the Representative agrees to pay the Company therefore, thirty days after receipt thereof.

"VI. Reports:

"The Representative shall keep the Company properly informed as to the business contemplated by this contract; and shall supply the name and address of every purchaser. He shall, on request, give the Company any specific information which it may desire to receive any time respecting his activities in connection with this contract.

"VII. Inquiries and Direct Sales:

"The Representative agrees to refer to The Company or to such other parties as The Company may direct, all inquiries received by the Representative for any of the Company's products for use outside of the stipulated territory, or for the use of machines and equipment not covered by this Contract.

"VIII. Cancellation of Orders:

"No orders shall be cancelled without The Company's consent, unless the Representative shall have received a corresponding cancellation resulting from failure on the part of the Company reasonably to fulfill its delivery promises, or unless the equipment provided by The Company shall have failed promptly to make good said guarantee.

\* \* \* \* \*

"XIII. Incidental Expenses:

"Each party to this Contract shall bear its own expenses for postage, cablegrams, etc., in connection with the business herein contemplated.

\* \* \* \* \*

"XV. Duration:

"This contract shall remain and be in force for a period of five years from the date hereof, provided however, that the Company reserves the right to cancel this contract upon sixty day notice by mail to the representative, if, in the opinion of The Company, the Representative is not procuring the volume of business from the territory assigned to him, which The Company believes can be procured from said territory or in the event, in the opinion of The Company, the Representative has been disloyal, or has been guilty of practices prejudicial to the company, or has failed in any other manner to comply with the terms of this contract.

Subject to the foregoing provision governing cancellation, the Representative shall have the option to renew this contract for a further period of five years after September 1, 1949.

"XVI. Place of Business:

"The Representative agrees to acquire a place of business with a suitable showroom and adequate personnel in the city of Mexico City, New Mexico, for the display of such of the Company's products as the Company is able to ship to the Representative for display purposes. The said place of business to be obtained by the Representative on or before the time of delivery to the Representative by The Company of its products for demonstration and exhibition.

"XVII. Products for Display:

"Subject to governmental regulations or restrictions, The Company agrees at its earliest opportunity, to ship to the Representative, one model V-26 Contour Machine, one Model ML, one model V-36 DoAll Contour Machine, one model Zephyr DoAll Contour Machine, one model G-1 Grinder, one DoAll Band Filer, one #4 Butt Welder on Pedistal, with shipping costs and duties prepaid, which machines the Representative agrees to set up at his place of business for display purposes. It is agreed that the said products so shipped to the representative for demonstration and exhibition purposes, shall be shipped on consignment only, and shall remain the property of the company until, and unless, they are sold upon the Company's approval.

"The Company, as soon as it is convenient to it, agrees to deliver or cause to be delivered to the Representative, a certain Ford truck suitably equipted to transport saws, files, grinding wheels, and similar products in the carrying on of the Representatives activities.

"It is understood that while, for Mexican licensing purposes, the title to said truck will be transferred to the Representative, he is in fact not the true owner thereof, and will be charged on the Company's books with the value there-

The signatories carried on under the contract until it was cancelled by defendant pursuant to notice, infra. Schenstrom continued winding up mutual affairs for the parties until termination was completely effected.

Plaintiff contends that the contract was of a dual character, partaking of an agency and a sales contract; that grounds for cancellation did not exist and, in any event, such grounds must be limited to those stated in the notice; and finally, that in cancelling the contract defendant did not act in good faith.

Defendant contends that the contract was one of agency even though plaintiff was designated an independent contractor, and that plaintiff had violated the terms of the contract, justifying cancellation. More specifically, defendant accuses plaintiff of fraud, false representation of material facts and breach of the contract terms, as set out in paragraph VI, XVI and XVII thereof.

The validity of the contract is not questioned. The causa proxima is the claimed right of plaintiff to depart from defendant's factory prices and sell defendant's products in Mexico at prices exceeding those prevailing in the United States.

The record to some extent suggests that officers of defendant may have been working at cross purposes at times. The export manager clearly insisted on conforming to defendant's list prices in correspondence with plaintiff had prior to the conference, while its chief executive merely cautioned plaintiff against charging "too much".

■ The formal contract was prepared by defendant's lawyer in its own law department, with all the conference data and correspondence available and in defendant's possession. If the "7 to one" price scale was so important, why is the contract silent in respect to it? The difficulty defendant's export manager was having with plaintiff relative to the scale of prices insisted upon, and which he refused to comply with, was warning of trouble to follow, if not controlled by the contract. One sentence in the written contract could have limited plaintiff's authority and required him to conform at all times to defendant's uniform list price. The absence of such a precautionary provision in the contract is creative of a situation against which defendant did not afford self-protection. Prepared by defendant, the instrument in writing is subject to interpretation pursuant to Minnesota law, and must be construed most favorably to the plaintiff. E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 89 A. L.R. 238.

While the earnest argument of counsel for defendant frankly charges Schenstrom with conduct prejudicial to the best inter-

of, which, as of this date, is agreed to be $1,000.00.

"The Representative shall bear the costs and expenses of maintaining his place of business, and of maintaining and operating of said truck and agrees at all times to carry adequate public liability and property damage insurance, thereon insuring the Representative and the Company, and to furnish the Company with a certificate of such insurance. The Representative shall not, without the written consent of The Company, sell or encumber the said truck or any of the products delivered to the Representative on a consignment.

"XVIII. Statutus of the Representative:

"It is expressly agreed that the Representative is not an employee of the Company, but is an independent contractor, and he shall have no authority to

pass upon the credit of any prospective buyer of the Company's products; that all contracts for the Company's products shall be payable at the home office of the Company.

"The Representative undertakes and agrees to devote his full time in Mexico or elsewhere as selected by The Company in the sale of the Company's products, and agrees not to act as the Representative or agent, or seller of any other goods, wares, merchandise, or products other than those of the Company as heretofore described.

"XIX. Transfer:

"The Representative shall not assign or in any way transfer this contract without the written consent of The Company.

"This contract shall be construed according to the laws of the State of Minnesota, U. S. A."

ests of his principal bordering on disloyalty, in the end it all boils down to the pertinent question of fact relating to Schenstrom's authority to use the scale price of "7 to one". It may well be that Schenstrom relied too much on finesse. Defendant may have lost confidence in him, after individual members of its official family concluded he was playing one against the other. I do not say he was. But his stratagem, if such it was, while perhaps lacking in business good taste, cannot be said to be unlawful. On the plaintiff's side of the case, counsel questions the good faith of defendant's attempt to cancel, pointing to the visit by its emissaries to plaintiff in Mexico for the admitted purpose of obtaining a new contract based on what is described in the notice of cancellation as the "new basis". Challenging defendant's good faith, counsel cites: Ewing v. Von Nieda, 8 Cir., 76 F.2d 177; Appliances, Inc. et al. v. Queen Stove Works, Minn., 36 N.W.2d 121; Holton et al. v. Monarch Motor Car Co., 202 Mich. 271, 168 N.W. 539; White Co. v. W. P. Farley & Co., 219 Ky. 66, 292 S.W. 472, 52 A.L.R. 541.

Defendant makes the point that the injection of the "7 to one" price feature into the case violates the parol evidence rule. With this I cannot agree. I appreciate that if the contract were complete in itself, setting forth the scale of prices, then silence on a related point that might have been embodied in it would not constitute an invitation to open the door to parol evidence in that respect. There is nothing here suggesting that plaintiff intends to incorporate by claimed oral agreement a meaning contrary to that expressed in the written instrument. The price scale authorization contended for by plaintiff is not inconsistent with the terms of the written contract. Under the circumstances, parol evidence was admissible to show that the scale of prices used by plaintiff in Mexico was in conformity with prices approved by defendant, and comes within the exception to the parol evidence rule. Staples v. Edwards & McCulloch Lumber Co., 56 Minn. 16, 57 N.W. 220; Hand v. Ryan Drug Co., 63 Minn. 539, 65 N.W. 1081; Osterberg et al. v. Section 30 Development Co., 160 Minn. 497, 200 N.W. 738; Bjornstad v. Northern States Power Co., 195 Minn. 439, 263 N.W. 289.

Defendant's counsel insist that under the terms of the contract plaintiff was an agent or an employee of defendant. This in some respects is contrary to the express provision of paragraph XVIII set out above. But this aside, the lack of control by defendant over plaintiff with respect to the manner and means by which the details of his work were to be carried out, will not permit the conclusion that Schenstrom was an employee, as contended by defendant. Larson v. Le Mere et al., 220 Minn. 25, 18 N.W.2d 696; Castner et al. v. Christgau, 222 Minn. 61, 24 N.W.2d 228; Willner v. Wallinder Sash & Door Co., 224 Minn. 361, 28 N.W.2d 682.

Counsel for plaintiff argue that the contract before the court partakes of two natures, that of agency, and that of sales. See Marrinan Medical Supply, Inc., v. Ft. Dodge Serum Co., 8 Cir., 47 F.2d 458, 460, in which the situation was not unlike the controlling facts here. The court held the contract to partake of the nature of sale and factorage. Judge Booth, speaking for the court, said: "It is not always easy to determine into which class a particular contract falls. * * * all the court can do is to consider the various earmarks as disclosed by the contract, and the surrounding facts and circumstances, and determine, as best it can, into which class the contract should be placed."

That the contract was valid and enforcible cannot be seriously questioned. Bendix Home Appliances Inc. v. Radio Accessories Co., 8 Cir., 129 F.2d 177; Emerson et al. v. Pacific Coast & Norway Packing Co., 96 Minn. 1, 104 N.W. 573, 1 L.R.A.,N.S., 445, 113 Am.St.Rep. 603, 6 Ann.Cas. 973. It only remains to determine whether there was good cause to cancel, as provided in paragraph XV. The

notice of cancellation [2] partakes more of an expression of regret than of a notice of cause. It suggests the desirability that defendant's products "be distributed on the same basis as they are in the United States", and goes on to say, "We regret that you are unable to continue representing us *on the new basis.*" (Emphasis supplied.) In my opinion, this notice falls short of providing a sufficient basis for terminating the contract. Whether the additional reasons adduced at trial and during argument would be a sufficient basis for defendant's terminating the contract is questionable on the record here made. Railway Co. v. McCarthy, 96 U.S. 258, 24 L.Ed. 693; McCreary v. Strongman et al., 3 Cir., 6 F.2d 441; Chevrolet Motor Co. v. Gladding, 4 Cir., 42 F.2d 440; Fruit Growers' Express Co. v. Plate Ice Co., 4 Cir., 59 F.2d 605.

▇ The burden to prove that cancellation was justified is upon the defendant. That burden has not been carried to the extent required. Liberty Bell Gold Mining Co. v. Smuggler-Union Mining Co., 8 Cir., 203 F. 795; Greenhut Cloak Co. v. Oreck, 130 Minn. 304, 153 N.W. 613; Anderson v. M. Burg & Sons, 170 Minn. 53, 212 N.W. 9.

Plaintiff's counsel, arguing against the validity of cancellation herein, question the good faith of defendant, pointing to L. A. Wilkie's knowledge and alleged approval by implication at least, of the criticised practice of plaintiff's price quotations of "7 to one". True, defendant's export manager had prohibited the use by plaintiff of anything other than factory prices. But defendant's chief executive was informed of the practice and acknowledged receipt of the information, adding, "We hope your plan will create a big volume of business." It may well be, therefore, that plaintiff was encouraged to rely on his demonstrated success in dealing with the chairman of defendant's board of directors, realizing he could not prevail upon other members of defendant's official family.

The briefs and oral argument of able counsel for the defendant have not been overlooked. The conduct of Schenstrom, relied upon by defendant as amounting to a breach of contract, is answered in the record by testimony of the plaintiff denying the breach in each instance, or justifying the alleged shortcomings of plaintiff.

▇ On the question of damages, defendant's counsel contend there is no showing that damage was sustained by plaintiff, and describe Schenstrom's claimed damage as "astronomical". Defendant argues that the record shows Schenstrom was "operating at a loss during the 18 months of operation" as its representative in Mexico, and that "only those commissions under the contract can be used in assessing damages." This court is confined to the record of the case in assessing damages. The court cannot speculate in determining the damages plaintiff may be entitled to, but in this type of case damages need not be proved with absolute certainty. The damages sought by plain-

[2] "July 17, 1945

"Registered Airmail
"Mr. William Schenstrom
"Maria Cristina Hotel
"Lerma 31
"Mexico, D. F.

"Dear Mr. Schenstrom:
"Mr. McCaffrey who recently spent some time with you in Mexico City advises us that you feel you are not in a position to continue as our representative in your territory assigned in the Republic of Mexico if our DoAll equipment and supplies are to be sold at United States list prices. As Mr. McCaffrey explained to you, the officials of our company have decided to establish an office in Mexico City where our products will be distributed on the same basis as they are in the United States.

"We regret that you are unable to continue representing us on the new basis. In keeping with the provision of your contract with us dated September 1, 1944, you are hereby notified that said contract shall be terminated and cancelled as of September 30, 1945.

"Yours very truly,
"DoAll International Company
"Division of The DoAll Company
(formerly a division of Continental Machines, Inc.)
"HMHarding:lks
"[Signed] H. M. Harding
"Export Manager"

tiff exceed the amount the court considers reasonable. Counsel for plaintiff rely to some extent on the claim that once the machines were sold to the trade in Mexico, the profit to Schenstrom from the sale of tools and supplies would "pyramid" from year to year. Future damages are proper, of course, but they are dependent on what the plaintiff accomplished during the period prior to cancellation. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Calkins v. F. W. Woolworth Co., 8 Cir., 27 F.2d 314, certiorari denied F. W. Woolworth Co. v. Calkins, 278 U.S. 645, 49 S. Ct. 80, 73 L.Ed. 558; Wakeman v. Wheeler & W. Mfg. Co., 101 N.Y. 205, 4 N.E. 264, 54 Am.Rep. 676.

In my opinion plaintiff, for the balance of the period he may have carried on under the contract, had it not been cancelled, sustained damage in the sum of $40,000. This takes into consideration any and all possibility of past and future employability of plaintiff in mitigation of damages.

Defendant's counterclaim is dismissed.

Plaintiff's counsel may submit findings of fact, conclusions of law, order for and form of judgment, consistent with the above, and upon proper notice.

An exception is allowed defendant.