JOHN F. CORBIN AND OTHERS v.
COMMISSIONER OF REVENUE.
AUGIES, INCORPORATED, INTERVENOR.

240 N. W. 2d 809.

February 20, 1976—Nos. 45109, 45128.

*Robert E. Faricy,* for intervenor.

*Warren Spannaus,* Attorney General, *C. H. Luther,* Deputy Attorney General, and *Arthur J. Glassman,* Special Assistant Attorney General, for commissioner.

*Peterson, Bell & Converse* and *Roger A. Jensen,* for respondents.

Heard before Kelly, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

On petitions of intervenor, Augies, Incorporated, and of the commissioner of revenue, we issued writs of certiorari to the Tax Court. In a previous decision, the Tax Court had determined that certain sales tax deficiencies existed,[1] and in the Tax Court's decision which we review in this opinion it held that respondents, John F. Corbin, et al., certain driver-salesmen for Augies, were employees of that relator and were therefore not liable for the sales tax deficiencies. The issue is whether the driver-salesmen

---

[1] In its decision and order in this case, the Tax Court vacated its previous order regarding the tax deficiencies.

were employees or independent contractors. We affirm the Tax Court's determination that they were employees.

Augies is in the food catering business. It supplies various foodstuffs and beverages (e. g., sandwiches, doughnuts, coffee, soft drinks, etc.) to its driver-salesmen who travel assigned routes making fixed stops to sell the products to customers. The evidence discloses that the drivers ordered the food they needed from Augies each day, based on the sales made the previous day. They picked up the food in the morning and paid for it in the afternoon from the receipts of the day. Although Augies sets the customer's price for the various items, the drivers frequently vary that price in practice. The difference between the cost of the goods and the price at which they were sold was the drivers' compensation. Perishable goods which were not sold during the day were not returned, but were absorbed as a loss by the drivers.

The catering trucks driven by respondents were owned, maintained, and insured by Augies, and displayed the sign "Mobile Chef—Augie's Catering" on the side. The trucks were leased by Augies to the individual drivers for 15 percent of the cost of the goods ordered by that driver for that day. Defined routes with specific stops were assigned to each driver. The drivers could not change a route without the approval of Augies, and they could not sell any merchandise other than that supplied by Augies. If a driver failed to report for work, an Augies supervisor would service the route. A route supervisor also periodically traveled around with the drivers to see that they were doing their work properly. A driver, if he wished, could arrange his own vacation schedule. Augies provided workmen's compensation insurance for the drivers, but did not withhold taxes or make social security payments on their behalf. Either party could terminate the relationship without any contractual liability with the exception that a driver was bound by a 5-year covenant not to compete.

The drivers involved in the instant case applied for sales tax numbers as independent contractors and collected and remitted

the sales tax during 1967 and 1968. However, the drivers made the application for sales tax numbers under threat of discharge by Augies. Thereafter, the drivers collected and remitted sales taxes for 1967 and 1968 in accordance with the advice of Augies' accountant. An audit by the commissioner of revenue revealed that the sales tax collected and remitted during this time was insufficient. The commissioner charged the drivers with these deficiencies. After a hearing on the matter the Tax Court upheld the commissioner's decision that the drivers were responsible for the tax deficiencies but remanded the case for a redetermination of the amounts of the deficiencies. The drivers then moved for a new hearing, claiming that they were employees of Augies and not independent contractors. The Tax Court held a new hearing in which Augies intervened as an interested party. The Tax Court found that the drivers were not independent contractors but were employees of Augies and were therefore not liable for the sales tax deficiencies.

The Minnesota sales tax statute which was in effect during the period in question, Minn. St. 1967, § 297A.02, provides in part:

"There is hereby imposed an excise tax of three percent of the gross receipts of any person from sales at retail, as hereinbefore defined, made in this state after July 31, 1967. In no case shall the tax imposed hereby upon the seller exceed the amount of tax which he is authorized and required by law to collect from the purchaser."

The statute defines "sale at retail" to mean "a sale for any purpose other than resale in the regular course of business." § 297A.01, subd. 4. If the drivers in this case are deemed employees or agents of Augies, then their authorized acts may be attributed to their employer, Augies.[2] Hence the drivers' sales

---

[2] We note that the Tax Court, in discussing this question, relies directly and exclusively on certain statutes dealing with the use tax and does not mention sales tax statutes in its memorandum. The use tax statutes and sales tax statutes are not interchangeable. As the United States Su-

would, in the contemplation of the law, be the retail sales of Augies. On the other hand, if the drivers in this case are deemed to be independent contractors, then the sales of food they made to their customers would be their own retail sales and they alone would be responsible for collecting and remitting the sales tax.

The question, then, is whether the drivers are independent contractors or whether they are employees of Augies. It is not always easy to answer this question. As we stated in Boland v. Morrill, 270 Minn. 86, 91, 132 N. W. 2d 711, 715 (1965):

"* * * No single test is available for determining such relationship. The question has been a fruitful source of litigation over the years. We have had occasion from time to time to consider a wide variety of facts in seeking an answer to this problem. The facts are seldom the same. Whether we apply the right of control or any other test, it is evident that no single factor standing alone will suffice. It is necessary to examine the overall relationship between the parties to determine whether the necessary contacts exist between them to establish one relationship or the other."

The approach invariably used by this court for determining whether one is an employee or an individual contractor focuses on the nature and extent of control reserved by the person for whom the work is done. Gill v. Northwest Airlines, Inc. 228 Minn. 164, 36 N. W. 2d 785 (1949); Castner v. Christgau, 222 Minn. 61, 24 N. W. 2d 228 (1946). In Frankle v. Twedt, 234 Minn. 42, 47, 47 N. W. 2d 482, 487 (1951), we elaborated that—

---

preme Court stated in Miller Bros. Co. v. Maryland, 347 U. S. 340, 343, 74 S. Ct. 535, 538, 98 L. ed. 744, 747 (1954): "Taxation of sales or purchases and taxation of use or possession of purchases are complementary and related but serve very different purposes." See, also, McLeod v. J. E. Dilworth Co. 322 U. S. 327, 64 S. Ct. 1023, 88 L. ed. 1304 (1944). While the Tax Court may employ the use tax statutes as a guideline for interpreting legislative intent, it is improper for the Tax Court to rely exclusively on use tax statutes to decide a sales tax question.

"* * * [t]he determinative right of control is not merely over *what* is to be done, but primarily over *how* it is to be done. Basically, it is the distinction between a person who is subject to orders as to *how* he does his work and one who agrees only to do the work in his own way."

Thus, the overall relationship between Augies and its drivers must be examined to determine the nature and extent of control reserved by Augies over the activities of its drivers.

The following aspects of the business relationship between the drivers and Augies support a conclusion that the drivers were employees. First, Augies specifically assigned the routes and the stops to the drivers. The drivers had no freedom to change a route other than with Augies' acquiescence. Second, when the drivers started in the job, they were instructed how to do the work by Augies' supervisors and were periodically accompanied by supervisors on the routes. Third, if the drivers failed to show up for work, the supervisors would take over the route in the same way that an employer would fill in for an absent employee. Fourth, the drivers were prohibited from selling anything but Augies' products, and thus the drivers had no freedom to increase their profit margin by shopping around for a less expensive supplier. Fifth, the trucks driven by respondents were owned, maintained, and insured by Augies, and displayed Augies' advertisement. There was no individual identification for the drivers which would suggest to the public that they were a separate entity and not just a part of Augies, Incorporated. Finally, Augies maintained workmen's compensation for its drivers just as it would for any other employees.

On the other hand, there are certain factors which could support a conclusion that the drivers were independent contractors. First, the drivers purchased the goods from Augies and absorbed the loss if they were unable to sell the merchandise. Thus, the drivers assumed the risk of loss, a risk which is characteristic of a sole proprietorship rather than an employee relationship. Second, the drivers could, in practice, vary the resale prices set

by Augies and thereby had a degree of freedom in determining their profit margin. Third, the drivers leased the trucks from Augies in contrast to employees who normally have free use of the employer's equipment. Fourth, the drivers arranged for their own vacations in contrast to employees who normally take their vacations when it is convenient for the employer. Finally, Augies did not withhold any tax or make any social security contributions on behalf of the drivers in contrast to the normal employer-employee arrangement.

Based upon our study of these facts, we have concluded that the Tax Court correctly determined that respondents are employees of Augies, Incorporated. Boland v. Morrill, *supra,* is helpful in reaching this decision. In Boland, we held that a farm equipment salesman, Morrill, was an employee of Olson for purposes of tort liability despite the fact that Morrill possessed many of the incidents of an independent contractor (270 Minn. 88, 132 N. W. 2d 713):

"* * * Morrill was given his own exclusive territories in which to sell but * * * he could also sell in 'open' territory not assigned to other salesmen. * * *

"* * * He sold to farmers and to dealers of his own on a basis where he would buy from Olson and resell. Under this arrangement he would set his own price for resale and make his own arrangements for credit with the farmers and dealers. While Olson preferred that Morrill sell at suggested retail prices, he was not bound to do so, and he often sold below the suggested price. He paid Olson with his own money for the items so sold before delivering them and did his own billing on these particular sales. * * *

"Olson also had established dealers. Morrill sold to such dealers and was paid a commission on these sales monthly. This commission consisted of the difference between the wholesale price and the price at which he sold. * * *

"* * * He was under no requirement to work a given number of hours or days. He could take a vacation whenever he wished

and for as long as he desired, with no notification to Olson. * * * He could be called upon to service customers but was not required to respond. He was not required to make any reports as to where he was going or where he had been. * * *

"* * * He was given no stationery or business cards. While he gave gifts to his customers, such as pencil sets, he did so at his own expense.

"Morrill furnished his own automobile * * * which he frequently used to haul Olson products when he delivered them. * * * He carried his own automobile liability insurance. He was not reimbursed for any expenses, such as traveling expenses, meals, postage, and telephone calls.

"At times Morrill sold small amounts of merchandise for other companies, but these other products were noncompetitive with Olson products and were sold with the consent of Olson. As to these products, he bought from the manufacturer and resold."

It appears from these facts that Olson had much less control over the activities of Morrill than Augies had over the activities of the drivers in the instant case. Despite the considerable freedoms enjoyed by Morrill, we nevertheless held that Morrill was an employee and not an independent contractor.

Although the drivers in the instant case possessed some of the characteristics of independent contractors, they remained effectively under the control of Augies, particularly in the sense that Augies controlled the definition of the drivers' routes and the manner of servicing those routes. Even some of the factors indicating independent contractor status, such as risk of loss and lease of trucks, actually operated to Augies' advantage, all of which further indicate the commanding position Augies held in the business relationship. Overall, it cannot be said that the Tax Court erred when it concluded that "the status of [the drivers] more closely resembles that of employees than that of independent contractors."

Augies claims that regardless of the legal conclusion reached as to respondents' status they are estopped from denying that

they are independent contractors because they have not previously asserted their alleged employee status and because they previously represented themselves as independent contractors when they made application for sales tax numbers. However, the evidence clearly supports the Tax Court's finding that the drivers did not freely and voluntarily sign the sales tax application since they signed under threat of discharge. Further, we find no factual basis for the claim that the drivers are estopped because they had not previously asserted their status as employees. Nothing has been called to our attention which would logically have impelled them to do so, and their mere failure to have done so is not alone sufficient to support estoppel.

Thus, we hold that the drivers were employees of Augies and that the sales made by the drivers were, in the contemplation of the law and under the facts of this case, the retail sales of their employer, Augies, Incorporated. The specific tax responsibility of Augies is not an issue on this appeal, and therefore it is unnecessary for us to address ourselves to that question.

Affirmed.

MR. JUSTICE TODD took no part in the consideration or decision of this case.